# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

SHIRLEY CROSS                                                                 PLAINTIFF

V.                              NO. 2:04cv00106-JFF

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                        DEFENDANT

## MEMORANDUM AND OPINION

Plaintiff, Shirley Cross, appeals the final decision of the Commissioner denying her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Both Parties have submitted appeal briefs, and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). Provided that substantial evidence supports the Commissioner's decision, this Court may not reverse even if the record also provides substantial evidence to support a contrary outcome. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

It is well settled that the claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. *Ingram v. Chater,* 107 F.3d 598, 601 (8th Cir. 1997). The Social Security Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff filed her applications for DIB and SSI on November 13, 2001, alleging an onset of disability of October 1, 2000, due to cervical disc disease (Tr. 48-50, 186-188). A hearing was held before an Administrative Law Judge on August 21, 2003 (Tr. 198-230). At the time of the hearing, Plaintiff was 44 years old with an eleventh grade education (Tr. 201, 227) She had past relevant work experience as a day care worker, matt cutter, picture framer, and office clerk (Tr. 202-205).

On January 21, 2004, the ALJ issued his decision denying benefits (Tr. 13-21). The ALJ analyzed Plaintiff's claim according to the familiar five-step sequential evaluation. 20 C.F.R. § § 404.1520, 416.920. He found: (1) she met the disability insured status requirements on October 1, 2000 through December 31, 2005; (2) she had not engaged in substantial gainful activity; (3) the medical evidence established that she had cervical disc disease (status post fusion), hypertension, and chronic pain, but that she did not have an impairment or combination of impairments listed in, or medically equal to one in the Listings for presumptive disability; (4) her subjective allegations were not fully credible; (5) she retained the residual functional capacity (RFC) to perform work related activities except for work involving lifting more than 15 pounds; (6) she was unable to perform her past relevant work as day care worker, matt cutter, picture framer, and generic office clerk; (7) she retained the RFC to perform a narrow range of light work activity and the full range of sedentary work activity; she had the following limitations: she could lift and carry up to 15 pounds occasionally; she could stand and walk for 4 hours in an 8 hour work period, 1-2 hours without interruption; she could sit for a total of 6 hours in an 8 hour work period, 2 hours without interruption; she could frequently balance, occasionally climb,

stoop, crouch, kneel, crawl, and push/pull up to 15 pounds; with restrictions from temperature and humidity extremes; and she had no significant limitations in her ability to reach, handle, feel, see, hear, or speak; (8) she was 44 years old, which is defined as a younger individual; (9) she had an eleventh grade education, which is defined as a limited education; (10) she had no transferable work skills; and (11) vocational expert (VE) testimony established that a significant number of jobs existed in the national economy which Plaintiff could perform such as receptionist (Tr. 20-21). Therefore, the ALJ concluded that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for a review, making the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Plaintiff argues there is not substantial evidence to support the ALJ's decision where: (1) the ALJ erred in his residual functional determination by not including limitation in reaching (*Plaintiff's Appeal Brief* at 10-13); and (2) the ALJ erred in his credibility analysis by requiring Plaintiff to produce objective evidence of pain (*Plaintiff's Appeal Brief* at 13-15).

First, Plaintiff argues that the ALJ erred in his residual functional determination by not including limitation in reaching. The ALJ found that Plaintiff retained the RFC to perform a narrow range of light work activity and the full range of sedentary work activity. Specifically, he found: she could lift and carry up to 15 pounds occasionally; she could stand and walk for 4 hours in an 8 hour work period, 1-2 hours without interruption; she could sit for a total of 6 hours in an 8 hour work period, 2 hours without interruption; she could frequently balance, occasionally climb, stoop, crouch, kneel, crawl, and push/pull up to 15 pounds; with restrictions from temperature and humidity extremes; and she had no significant limitations in her ability to reach, handle, feel, see, hear, or speak (Tr. 21). The determination of a residual functional

capacity is an administrative assessment, based on the totality of the evidence, of the extent to which the claimant's impairments and related symptoms affect his capability to do work-related activities. 20 C.F.R. § 404.1545; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). After reviewing the evidence, the Court concludes that substantial evidence supports the ALJ's RFC assessment.

In October 2000, after complaining of a two week history of neck pain which radiated to her right shoulder and elbow, Plaintiff's treating physician Hoy Speer, M.D., requested a neurosurgical consultation with Scott Schlesinger, M.D. (Tr. 113). On November 1, 2000, Plaintiff underwent a diskectomy and fusion of her cervical spine (Tr. 111-114, 145-148). She was advised that a second surgery might be necessary (Tr. 112). Dr. Schlesinger recommended that Plaintiff should remain off work until February 26, 2001 (Tr. 108). By January 15, 2001, Dr. Schlesinger stated that Plaintiff's arm pain had resolved. (Tr. 110). By March 8, 2001, Dr. Schlesinger stated that Plaintiff's radicular pain was gone, her weakness was largely resolved, and that she had "done great." (Tr. 109). She was released from his care, to return as needed (Tr. 109); Plaintiff did not return.

The ALJ considered Dr. Yelvington's[1] opinion and noted that his report would support less than a full range of sedentary work (Tr. 17). However, the ALJ did not accord substantial weight to Dr. Yelvington's opinion because he was not a long-term treating physician[2], and

---

[1] Dr. Yelvington's first name could not be located in the record.

[2] At the hearing Plaintiff was asked who she considered to be her treating physicians (Tr. 215). She responded that in the past it had been, Dr. Speer, who retired, and Dr. Pupsta, who is deceased. She stated that although she tried Dr. Plant, she was not satisfied, and so she thought she might start seeing Dr. Yelvington. She stated Dr. Yelvington had examined her for the first time on Monday, and had treated her high blood pressure with medication. (Tr. 215-216).

4

because his opinions were not supported by objective clinical evidence (Tr. 17). Federal Regulations provide that if a treating source has seen the patient a number of times and long enough to obtain a longitudinal picture of the impairment, that source's opinion will be given more weight than if it were from a non-treating source. 20 C.F.R. § 404.1527(d)(2)(i), § 416.927(d)(2)(i). In addition, opinions of consulting physicians who examine claimant once or not at all do not generally constitute substantial evidence, especially when contradicted by treating physicians' opinions which are supported by clinical data. *Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991). The ALJ properly determined that Dr. Yelvington's status did not yet rise to that of a treating physician, and the ALJ's decision to give more weight to Dr. Schlesinger's opinion is supported by substantial evidence.

The ALJ also considered the February 2002, consultative exam performed by J.L. Pritchard, M.D. (Tr. 164-171). Dr. Pritchard found a decreased range of motion in the cervical spine[3] (Tr. 167), but a normal range of motion in her lumbar spine, shoulders, elbows, wrists, hands and knees (Tr. 167-68). Plaintiff reported her only medication as Tylenol (Tr. 164).

The ALJ also considered the treatment record from Dr. Richard Plant, who saw Plaintiff on January 27, 2003 and August 5, 2003, (Tr. 18, 175-180). Dr. Plant stated Plaintiff could not perform heavy lifting or lift over her head (Tr. 175).

---

[3] Plaintiff's Cervical Spine Range of Motion:

|  | Normal Motion | Range of Motion In Degrees |
|---|---|---|
| Forward Flexion | 0-40 | 0-30 |
| Flexion | 0-30 | 0-20 |
| Extension | 0-30 | 0-20 |
| Rotation | 0-40 R&L | 0-30   (Tr. 167). |

The ALJ also discussed the opinion of consultative examiner and rheumatologist, Donald G. Leonard, M.D., who examined Plaintiff on October 13, 2003. (Tr. 17, 181-187). At that time, Plaintiff reported that she had taken Neurontin "with success but can't afford," and was not taking any pain medication, either prescribed or over-the-counter (Tr. 17, 181). Dr. Leonard's examination found: "Well healed anterior cervical scar with moderate reduction cervical ROM to 90% with trace/GR 1 muscle spasm. Remainder of exam unremarkable." (Tr. 181). Even though his exam showed a moderate reduction in her cervical range of motion, Dr. Leonard did not assess any reaching limitations. (Tr. 185). In conclusion, the ALJ fully described his rationale in support of his residual functional capacity determination, including his review of the medical evidence, and substantial evidence supports his decision.

Plaintiff argues the ALJ erred in his credibility analysis by requiring Plaintiff to produce objective evidence of pain (*Plaintiff's Appeal Brief* at 13-15). Contrary to Plaintiff's argument, the ALJ properly evaluated Plaintiff's subjective complaints in accordance with *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984), and substantial evidence supports his decision. In *Polaski*, the Court set out the factors to consider in evaluating credibility:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;

> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (8th Cir. 1984)(emphasis in original).

First, the ALJ considered Plaintiff's "very restricted pattern of daily living." (Tr. 14). He properly concluded that such a restricted lifestyle was more on a self-imposed voluntary basis because the medical records did not support such a level of functional restrictions. Second, the ALJ discussed Plaintiff's alleged chronic pain in her neck and lower back which Plaintiff alleged was of such severity as to be debilitating; the ALJ also noted that Plaintiff testified that doing anything aggravated her condition (Tr. 14). However, after reviewing all the evidence, the ALJ properly found that the clinical observations and other objective evidence did not corroborate these allegations. The ALJ also discussed Plaintiff's varied use of pain medication. Although Plaintiff claims that her pain is so debilitating that she cannot work at all, the record shows that, at times she was either taking no medication (Tr. 77, 181), or taking Tylenol (Tr. 164). Finally, the ALJ properly noted that Plaintiff's failure to seek regular medical attention was inconsistent with her complaints of disabling pain. Since her November 2000 surgery, Plaintiff has not returned to Dr. Schlesinger, who released his patient from his care after successful surgery, recommending that she return as needed. The record indicates that Plaintiff last saw Ben Pupsta, M.D., in July 2001 (Tr. 150-152), and she did not seek further medical treatment for approximately 18 months, until her first appointment with Dr. Plant in January 2003. Plaintiff

did not return to Dr. Plant until just 10 days before her hearing, in August 2003 (Tr. 175). Plaintiff also first visited Dr. Yelvington, the Monday before her hearing, in August 2003 (Tr. 172-174). The ALJ did not discount all of Plaintiff's subjective complaints. He simply found that they were not fully credible to the extent alleged, and substantial evidence supports his finding.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there substantial evidence in the record as a whole that supports the decision of the ALJ. *E.g.*, *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's Complaint is DISMISSED, WITH PREJUDICE.

DATED this 21st day of July, 2005.

UNITED STATES MAGISTRATE JUDGE